THE STATE OF OHIO *v.* ALBERT.

(No. 83-CRB-258—Decided August 22, 1983.)

Belmont County Court, Western Division.

*Mr. William L. Thomas,* prosecuting attorney, and *Mr. Frank Pierce,* for plaintiff.

*Messrs. Espy & Love* and *Mr. Andrew J. Love,* for defendant Jerry Albert.

WHITE, J. This matter came on for trial to the court on a complaint charging a violation of R.C. 2919.22(B)(2).

The defendant is the Principal of the St. Clairsville-Richland Elementary School at which Judith Marie Beckett, age nine, is a student. He is charged by the child's mother with having, on May 17, 1983, administered to her child:

"* * * corporal punishment or other physical disciplinary measures in a cruel manner, which punishment or discipline was excessive under the circumstances and created a substantial risk of physical harm to [her child] * * *."

The specific facts adduced at hearing will be discussed as they respectively pertain to the individual categories of analysis set forth below.

Corporal Punishment

However, before beginning the analysis, a prefatory review of the concept of corporal punishment in the American educational system, the Ohio statutory provisions, and the governing case law appears in order.

The use of corporal punishment in this country as a means of disciplining school children dates to the colonial period. It has survived the transformation of primary and secondary education from the colonials' reliance on optional private arrangements to our present system of compulsory education and dependence on public schools. Despite the general abandonment of corporal punishment as a means of punishing criminal offenders, the practice continues to play a role in the public education of school children in most parts of the country. *Ingraham* v. *Wright* (1977), 430 U.S. 651, at 600-661.

Ohio is one of twenty-one states which

14

have by legislation authorized the moderate use of corporal punishment in public schools. R.C. 3319.41 provides:

"A person employed or engaged as a teacher, principal, or administrator in a school, whether public or private, may inflict or cause to be inflicted, reasonable corporal punishment upon a pupil attending such school whenever such punishment is reasonably necessary in order to preserve discipline while such pupil is subject to school authority. * * *"

In a recent case, the Sixth District Court of Appeals concluded that R.C. 3319.41 does not create an affirmative defense, placing the burden on the defendant, but requires the state to prove not only the elements of the offense charged (therein, assault [R.C. 2903.13(A)]), but also that the corporal punishment was unreasonable and not rationally related to the maintenance of discipline and order. *State* v. *Hoover* (1982), 5 Ohio App. 3d 207.

I can discern no significant difference in the application of that principle to a charge under R.C. 2919.22(B), and since a motion for leave to appeal that decision to the Ohio Supreme Court was overruled by the high court on June 30, 1982 (case No. 82-708), I will consider that to be an implied affirmation by that tribunal and treat the principle as governing case law in Ohio.

Likewise, I will follow the criteria set forth by the appellate court in *State* v. *Hoover, supra,* for determining the "reasonableness" of corporal punishment, specifically the standards set forth in R.C. 2919.22(B):

(1) that it not be administered in a cruel manner;

(2) that it not be excessive under the circumstances; and

(3) that it not create a substantial risk of physical harm to the child.

Finally, the Ohio Supreme Court has also determined that the culpable mental state of the defendant in a charge under R.C. 2919.22 is one of "recklessness" and

that it is the burden of the state to prove the existence of the same. *State* v. *Adams* (1980), 62 Ohio St. 2d 151 [16 O.O.3d 169].

"Recklessness" is defined in R.C. 2901.22(C) as:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. * * *"

From the applicable statutes and the case law, it appears that the analysis of this case must fall into three distinct but interrelated categories: (1) the decision to administer corporal punishment; (2) the method of corporal punishment undertaken; and (3) the results of the punishment as applied; and that each be considered in light of the required culpable mental state of recklessness on the part of the defendant.

The Decision to Punish

R.C. 3319.41 requires that the decision to administer corporal punishment be "* * * reasonably necessary in order to preserve discipline * * *."

In this case, the child's teacher had administered a course of disciplinary measures to the child over the length of the school year consisting of negative reinforcement measures in the form of deprivation, such as shortened recesses, entire recesses deprived, and denial of gym privileges, as well as positive measures by communicating with the child's parents and obtaining cooperation from the parents in reinforcing to their child the necessity and purpose for the discipline.

Over a three-day period prior to the incident here, the child had exhibited recalcitrant and insubordinate conduct toward her teacher by such actions as refusing to work, throwing tantrums, and giggling when reprimanded.

On the day in question, while on a class field trip, the child threw a tantrum regarding her lunch; participated in

"rubber-band stinging," hairpulling and other boisterous behavior on the bus ride home; and again exhibited further recalcitrant behavior when remonstrated by her teacher by placing the offending rubber band in her mouth and giggling.

Upon returning to the classroom, and while "laying her head on her desk" with the rest of the class as part of a general discipline imposed for conduct on the field trip, the child participated in "looking at a picture" and "passing a note" with another child. At this point, the teacher removed the child from the classroom and requested the presence of the defendant, as principal, for administration of corporal punishment.

From the above, I can only conclude that the decision to administer corporal punishment to this child was reasonably necessary to preserve discipline. The child had exhibited repeated behavior problems through the school year; more moderate forms of discipline were employed by the teacher with only temporary success. When these same methods were applied over the three-day period prior to this incident and on the day in question, virtually no success was obtained.

Although not conclusive on the issue, it is certainly worthwhile to note that in March of the school year, the child's mother, in a discussion with the teacher, acknowledged that, if the behavior pattern continued to be disruptive, a paddling would be in order.

Likewise, it must be noted that although the child is labeled under existing educational terminology as a "developmentally handicapped child," her handicap, a speech deficiency, is not linked to the behavior pattern exhibited.

Therefore, in light of the prior behavior pattern of the child; the attempt at, and ultimate failure of, more moderate disciplinary measures; and the continuing, frequent misbehavior exhibited by the child, the decision to administer corporal punishment was proper under the circumstances.

## The Method of Punishment

The punishment administered by the defendant was one swat with a wooden paddle approximately eighteen inches in length, one-half inch thick, and with a striking surface of approximately ten to twelve square inches. It was administered to the buttock area over a distance of approximately eighteen inches by "snapping of the wrist" rather than an "arm swing" motion.

The child testified that the force of the blow propelled her forward such that she "almost fell." However, both the defendant and the teacher who witnessed the incident said that she was not propelled forward to any noticeable degree by the blow, and in light of the child's testimony as to the size of the paddle used, I can only conclude that this nine year old's perception of many aspects of the incident was exaggerated in light of her emotional state resulting from her humiliation, fear, and uncertainty as to her fate.

The defendant testified that the method of punishment administered was determined after his consideration of the child's age, size, gender, and other physical characteristics, and the pattern of the child's behavior as related to him by the child's teacher.

Further, to remove the proximity of a question of malice, retribution, or striking in anger, the procedure employed was not to have the teacher whose classroom was disrupted and whose authority was directly affronted by the child administer the blow, but the defendant who is charged with general order within the building and was not directly involved in any of the incidents of misbehavior.

From these circumstances, I can only conclude that the corporal punishment administered by the defendant was minimal, and not excessive, and that the same was not administered in a cruel manner, since it was not an extraordinary or unusual method, and was not utilized solely for the infliction of pain upon the child.

### The Results of the Punishment

Following administration of the paddling, the child was crying, but returned to her class and sat in her assigned seat. Upon returning home, her mother noticed that she was upset and learned of the punishment. Upon viewing the child's buttocks, the mother observed a red welt and the child complained of continued tenderness.

The mother called the local police and a series of photographs of the affected area were taken by a dispatcher. The photographs reveal a red welted area on the right buttock.

The mother testified that the child was "awake all night" unable to comfortably sleep. However, she was sent to school the next morning. Both the classroom teacher and an art teacher whose class the child attended testified that the child sat normally in class and did not complain of discomfort. Although the mother testified that on the second day after the incident, she observed her child in class "sitting on her knees," this is not necessarily inconsistent with the teachers' observations, and I must resolve any inconsistency in favor of the prolonged observation of the teachers over an isolated incident of observation of the parent, with the inference that the child was not enduring substantial suffering over this time period.

On the second day after the incident, the child was examined by Dr. George Cholak who observed a slight limp in the child's walk and a red welted area on the right buttock and tenderness on palpation. X-rays, which revealed no fractures, were otherwise within normal limits. Conservative measures through the use of compresses were prescribed.

Another photograph, the authenticity of which was stipulated in the absence of the photographer, and circumstantially identified as being taken on the second day after the incident, does not reveal a welted area as significant as those on the night of the incident.

R.C. 3919.22 speaks of creating a substantial risk of "serious physical harm" to the child.

R.C. 2901.01(E) defines "serious physical harm to persons," and the pertinent provisions for this case are as follows:

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering or which involves any degree of prolonged or intractable pain."

Any disfigurement evidenced by the welted area was not permanent in nature, and even though temporary, was not serious. Likewise, the acute pain was not of such duration as to result in substantial suffering, based upon the child's return to school and the observation of her teachers after the incident.

That leaves the issue of "any degree of prolonged * * * pain." The child testified that she was "sore for about a week"; Dr. Cholak observed a limp two days after the incident and palpated tenderness in the affected area on the same day. To the extent that she suffered pain to any degree for this period of time, the child actually suffered serious physical harm, as defined by the statute.

This aspect of the analysis presents the most difficulty, for once any disfigurement, even temporary, or evidence of continued pain, suffered by a small child is considered, analytical terms such as "necessity" and "reasonableness" become overshadowed by emotional considerations for the well-being of small children. Thus, I can understand and empathize with the reaction of the child's mother upon viewing the physical end results upon her child of the administration of the punishment. Her reaction summarized in her testimony of "I gave permission for a paddling — not this" is not extraordinary.

However, by accepting the concept of corporal punishment on school children, the Ohio General Assembly has, by definition, accepted an end result of infliction of pain and temporary disfigurement in the form of welts, to a certain degree. Although probative, the end result cannot be conclusive of the standards of reasonableness and necessity discussed above. To do so would be to place upon the administrator of the corporal punishment a burden of strict liability. That is, if the end result were serious physical harm in the form of temporary, serious disfigurement or acute pain resulting in substantial suffering or prolonged pain of any degree, then he would be liable notwithstanding his consideration in deciding to administer the punishment, in determining the method of punishment, and the precautions undertaken to reduce the risk of harm.

This is clearly not the law in Ohio. As previously noted, the Ohio Supreme Court has imposed a standard of recklessness upon the actor in such a situation. Thus, it is incumbent upon the state of Ohio to prove, beyond a reasonable doubt, that in this case, the defendant, with heedless indifference to the consequences, perversely disregarded a known risk that his conduct was likely to result in a substantial risk of serious physical harm to the child. It is insufficient to maintain a conviction that the proof be of such a nature that the defendant, because of a substantial lapse from due care, merely failed to perceive or avoid such a risk, which is the standard for criminal negligence. R.C. 2901.22(D).

Furthermore, R.C. 2919.22 speaks of "substantial risk" of serious physical harm. A "substantial risk" is defined in R.C. 2901.01(H) as:

" 'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

Thus, it is clear that what must be considered is not just the end result after the fact, but the strong likelihood of the result before the fact. Although the result is certainly some evidence of the likelihood, it does not foreclose the question. To consider only the end result would be to completely disregard all other circumstances surrounding the incident.

The defendant testified that he had the child assume a position which would reduce the chance of the blow striking an area other than the buttocks, and even readjusted her position once. He also directed the child to "look at a spot on the wall" to avoid flinching and thus changing the angle of the blow. These actions indicate an effort on behalf of the defendant to reduce the risk of serious physical harm to the child, rather than to enhance it.

Additionally, there was no evidence to indicate that the defendant knew of any condition of the child which would increase her exposure to risk of serious physical harm beyond that of any other child of her age, gender, and stature.

Dr. Cholak testified that in his opinion the blow administered *could* have created a substantial risk of serious physical harm. However, in expanding on his opinion, the doctor reflected on the range of harm which could result such as fractures, but in expanding upon the scope of risk involved, he categorized the blow as "reasonably severe" and conceded that "conceivably it could be not so severe as to cause injury." The various inferences which can be drawn from this opinion are not sufficient to support a finding beyond a reasonable doubt, that the defendant, in fact, created a strong possibility, as contrasted with a remote or insignificant possibility, that the result which did occur, would in fact occur.

Thus, it can only be concluded that the state has not proved beyond a reasonable doubt that the defendant did with heedless indifference to the consequences, perversely disregard a known risk that his conduct, in deciding to administer corporal punishment and in the manner in

which he did administer it, would likely result in a strong possibility that the child would suffer temporary, serious disfigurement; acute pain resulting in substantial suffering; or any degree of prolonged pain. Therefore, it has not been proven that he recklessly created a substantial risk of serious physical harm to the child.

### Conclusion

Accordingly, the defendant is adjudged not guilty as charged.

*Defendant not guilty.*