OPINION
{¶ 1} This is an appeal by appellant, Barbara Horton-Alomar, from the October 29, 2003 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling appellant's objections to the magistrate's decision, and finding appellant's nephew, Skylar Horton ("Skylar"), to be an abused, neglected and dependent minor. The trial court also made Skylar a ward of the court, and ordered that he not be returned to appellant, his former custodian.
 {¶ 2} Skylar was born on May 18, 1991, and was 11 years old at the time of trial. Appellant is Skylar's maternal aunt. Following Skylar's mother's death in 1998, appellant became Skylar's legal custodian, the whereabouts of Skylar's father being unknown. According to the complaint, on May 21, 2002, Skylar reported that, one day earlier, appellant hit him with a belt after the two argued about Skylar having lied about a school homework log. The complaint further states that Skylar, "has circular marks and linear bruising on his upper left thigh, and marks on his right forearm." Skylar was transported to Franklin County Children Services ("FCCS" or "the agency") following his report of the alleged abuse. He was later placed in foster care. In its complaint, FCCS alleged Skylar to be an abused minor (pursuant to R.C. 2151.031(D)), a neglected minor (pursuant to R.C. 2151.03(A)(2)) and a dependent minor (pursuant to R.C.2151.04(C)), and requested custody of him. The assigned magistrate appointed an assistant public defender to serve as Skylar's guardian ad litem. Appellant was represented by counsel at all stages of the proceedings.
 {¶ 3} The matter was tried before the magistrate over four days beginning October 22, 2002. Following the hearing, the magistrate issued a decision finding Skylar to be an abused, neglected, and dependent minor, and ordering that Skylar be made a ward of the court. The magistrate committed Skylar to the temporary custody of FCCS, and adopted the case plan offered by the agency.
 {¶ 4} On November 27, 2002, appellant filed objections to the magistrate's decision. In a one-paragraph memorandum in support of her motion, appellant argued (1) the magistrate erred in allowing a victim-witness advocate to sit next to Skylar during his trial testimony, (2) the magistrate erred in refusing to allow appellant's counsel to question witnesses regarding standards and attitudes within the African-American community respecting the use of corporal punishment, and (3) the magistrate's findings that Skylar was abused, neglected, and dependent were against the manifest weight of the evidence.
 {¶ 5} On May 6, 2003, after the transcript of the hearing became available, appellant filed a supplemental memorandum in support of her objections. Therein, she argued that, at 11 years of age, Skylar was competent to testify on his own, and no foundation had been laid for the necessity of a victim-witness advocate to sit with Skylar during his trial testimony. Appellant further argued that she was prejudiced by the magistrate's preclusion of evidence regarding the effect on her of attitudes toward corporal punishment within the African-American community. She argued that such evidence "would elicit relevant evidence pursuant to Evid.R. 401 and 406" and "would contrast the Courts [sic] theory as well as that of the State that Barbara Horton-Alomar's occupation as a police officer was relevant to show she should have been aware that this corporal punishment was excessive."[1] With respect to the weight of the evidence, appellant argued that the facts adduced at trial demonstrate that the corporal punishment she administered to Skylar was not excessive under the circumstances, and did not create a substantial risk of serious physical harm.
 {¶ 6} On May 20, 2003, the trial court heard oral arguments with respect to appellant's objections. On October 29, 2003, the trial court journalized a decision and entry overruling appellant's objections and adopting the magistrate's decision. Appellant timely filed a notice of appeal from the trial court's judgment, and assigns the following errors for our review:
ASSIGNMENT OF ERROR NO. 1:
The trial court commits reversible error in denying the defendant's motion to dismiss case [sic] where the state failed to prove through sufficient evidence that the defendant's [sic] acts created a substantial risk of serious physical harm to the child.
ASSIGNMENT OF ERROR NO. 2:
The trial court errs in permitting assistance and encouragement to a minor in violation of a defendant's [sic] sixth andfourteenth amendment rights under the constitution of the united states and article i, section 10 of the constitution of the state of ohio.
ASSIGNMENT OF ERROR NO. 3:
The trial court erred when it overruled defendant's [sic] request that the actual belt be produced, citing that a picture of the belt was sufficient.
ASSIGNMENT OF ERROR NO. 4:
The trial court commits reversible error when it does not allow questions of an investigative caseworker about whether, as part of his training, he was aware that different cultures in this community may experience more incidents of corporal punishment.
ASSIGNMENT OF ERROR NO. 5:
The determination of the trial court is against the manifest weight of the evidence.
 {¶ 7} Appellant's first and fifth assignments of error present interrelated issues and we will address them contemporaneously. Appellant argues that the trial court's conclusion that Skylar was an abused child is against the manifest weight of the evidence and is not supported by sufficient evidence. Specifically, she contends that the weight and sufficiency of the evidence do not support the conclusion that appellant's corporal punishment of Skylar was excessive under the circumstances or that it created a substantial risk of serious physical harm to Skylar.
 {¶ 8} Pursuant to R.C. 2151.353(A)(2), if a child is adjudicated as abused, neglected, or dependent, the court may commit the child to the temporary custody of a public children services agency. Pursuant to R.C. 2151.031(D), an abused child is a child who, "[b]ecause of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." Division (C) of R.C. 2151.031 provides, in pertinent part:
Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.
 {¶ 9} Section 2919.22 defines the crime of child endangering.[2] Division (B) of that section provides, in pertinent part:
No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
(1) Abuse the child;
(2) Torture or cruelly abuse the child;
(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk[3] of serious physical harm to the child;
(4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development[.]
 {¶ 10} "Serious physical harm" is defined as follows:
"Serious physical harm to persons" means any of the following:
(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
R.C. 2901.01(A)(5).
 {¶ 11} That a child is an abused minor must be established by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish "beyond a reasonable doubt" in criminal cases. It is that quantum of evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, 53 Ohio O.O. 361, 120 N.E.2d 118.
 {¶ 12} When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 39 Ohio O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Accordingly, judgments which are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, syllabus.
 {¶ 13} A parent has a fundamental liberty interest in raising and controlling his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d. 599. "Indeed, that parental right is among those inalienable rights secured by natural law which Article I, Section 1 of the Ohio Constitution was intended to protect from infringement by the police power of the state." State v. Hause (Aug. 6, 1999), 2nd Dist. No. 17614, 1999 Ohio App. LEXIS 3627, at *6-7. (Emphasis sic.) But "the state has legitimate interests in the protection and safety of children and in the reporting of child abuse, which it may employ its police power to enforce. The parental right and the state's interest are in a delicate balance." Id. at *7.
 {¶ 14} The Supreme Court of Ohio has recognized that a parent or guardian may impose proper corporal punishment on a child because "[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline."State v. Suchomski (1991), 58 Ohio St.3d 74, 75,567 N.E.2d 1304. Furthermore, Ohio law has recognized that parents have the right of restraint over their children and the duty to correct and punish them for misbehavior. In re Schuerman (1991),74 Ohio App.3d 528, 531, 599 N.E.2d 728. However, such punishment must be reasonable and must not exceed the bounds of moderation and inflict cruel punishment. Ibid. See, also, State v. Liggett
(1948), 84 Ohio App. 225, 39 O.O. 287, 83 N.E.2d 663. Corporal punishment that is excessive given the circumstances, and creates a substantial risk of serious harm, will support an adjudication that a child is abused. R.C. 2919.22(B)(3). "Proper and reasonable" parental discipline "stops well short of corporal punishment which creates a substantial risk of serious physical harm to a child." State v. Hicks (1993), 88 Ohio App.3d 515,519, 624 N.E.2d 332.
 {¶ 15} Courts have held that a child may be found to have been abused where whipping results in severe bruising. In reSurfer (Apr. 5, 1998), 10th Dist. No. 97APF09-1158, citingIn re Schuerman, supra, at 532. But bruising alone is insufficient to establish abuse. In re Schuerman, at 532; Cityof Shaker Heights v. Wright (June 27, 1996), 8th Dist. No. 69517. "Although probative, the end result cannot be conclusive of the standards of reasonableness and necessity required by R.C.2919.22 * * *. To do so would be to place upon the administrator of the corporal punishment a burden of strict liability * * *."State v. Albert (1983), 8 Ohio Misc.2d 13, 8 OBR 149,456 N.E.2d 594, paragraph two of the syllabus. See, also, In reSurfer, supra. However, the end result may be considered, because it is some evidence of the likelihood of the result before the fact. Albert, supra, paragraph three of the syllabus.
 {¶ 16} "The Revised Code does not specifically define what actions constitute the abuse of a child. Thus, the trial court, in its broad discretion, is to make its determination of abuse on a case-by-case basis." In re Schuerman, supra, at 531. In making a determination of abuse, the trial court must review the totality of the circumstances. Ibid. Specific factors to be considered in determining reasonableness and necessity include the circumstances giving rise to the incident, the past history of the child, and the nature, manner and measure of the discipline. Ibid., citing In re Noftz (Aug. 22, 1986), 6th
Dist. No. H-85-26.) The court should also take into account the age of the child, the child's response to non-corporal punishment in the past, and the behavior being punished. In re Bretz (Dec. 12, 1990), 5th App. No. CA-419.
 {¶ 17} Appellant did not testify at trial; accordingly, both appellant and the state rely upon the facts adduced during the testimony of Skylar and the state's other witnesses.
 {¶ 18} Skylar testified that, after appellant confronted him about his incomplete homework log, she became angry and went to her room to get her belt. She told Skylar to go to the bedroom he shared with his cousin. Appellant then joined Skylar in that bedroom and told Skylar to remove his pants. Skylar did not remove his pants, and instead crawled underneath the bunk bed. Appellant told Skylar to come out from under the bed, and she grabbed his leg in order to pull him out from under the bed. Skylar grabbed onto the underside of the bed in order to stay under the bed, but appellant managed to pull him out into the room. Appellant removed Skylar's pants and told him to remove his shirt. She then ordered him to put his hands up over his head on the rail of the bunk bed. Appellant then repeatedly struck Skylar with the belt, while Skylar used his arms and hands to attempt to shield himself from the blows. Skylar cried and told appellant "no" several times, but she continued to hit him. Skylar estimated that appellant struck him 15 times on his thighs, arm and backside. Skylar stated that appellant exerted herself during the beating to the point that she became out of breath.
 {¶ 19} Skylar testified that the beating caused him pain, and that, though he was able to fall asleep, the pain woke him from sleep in the middle of the night. He related that when he showed his bruises to appellant, she uttered a "small" laugh. Skylar testified that the bruise on his leg remained for at least one week, and the other bruises remained for three days. On the school playground on the day after the incident, Skylar's teacher, Allison Mayer ("Ms. Mayer") observed the bruises on Skylar's arm and sent him to the school nurse for ice. Skylar had been running with his friends on the playground and had fallen three times, but, he testified, the bruises on his body were present before he arrived at school and were not caused by falls on the playground. Principal Jill Lausch ("Ms. Lausch") summoned FCCS caseworker Danny Dahl ("Dahl"), who spoke with Skylar at the school and photographed Skylar's bruises. The court admitted into evidence 18 photographs taken on the date of the incident.
 {¶ 20} Ms. Mayer testified that she observed Skylar's bruises on the morning of May 21, 2002, and Skylar said, "Look Ms. Mayer, look what Aunt Bobby did to me." She observed bruising on the entire length and on both sides of one of Skylar's forearms. Ms. Lausch testified that on May 21, 2002, she observed the bruising on Skylar's wrist and arm, and, upon further investigation, saw "very red[,] * * * very deep" bruises on Skylar's sides, hips and backside. Ms. Lausch described some of the bruises as circular, resembling a belt buckle. Upon observing these injuries, Ms. Lausch contacted FCCS.
 {¶ 21} At the conclusion of his investigation, Dahl contacted police to obtain authorization to remove Skylar and place him in foster care. According to Dahl, during a subsequent interview with appellant, she told him that her whipping of Skylar was precipitated by a dispute about Skylar's homework log, and by Skylar screaming and kicking her, whereupon she "busted his butt" with a belt.
 {¶ 22} With respect to the evidence presented in the instant case, appellant points out that Skylar neither sought nor received any medical treatment as a result of his aunt having whipped him with the belt. She also directs our attention to the fact that Skylar ran in five foot races at school on the day following the incident. Thus, she argues, he was not partially or even temporarily incapacitated by any pain occasioned by his injuries.
 {¶ 23} With respect to the bruising observed on Skylar's body, appellant argues that the only reason the bruises were as visible as they were is that "Skylar Horton is a very fair skinned African American."[4] Appellant goes on to argue that she was not even the cause of the bruising, positing that the marks on Skylar's body could have resulted from his flailing underneath his bed in an attempt to evade appellant's belt, or from "his natural boyish disposition of falling during his foot races on the playground at school."[5]
 {¶ 24} Appellant directs our attention to the fact that Skylar evidenced no bleeding or broken skin, and did not inform anyone about the whipping incident until the afternoon of the following day, though he had opportunities to do so earlier in the day. Finally, appellant points out that Skylar had been suspended from school for fighting only one week prior to the whipping incident. During the suspension, appellant retrieved Skylar's homework assignments from his school so that he would not fall behind as a result of the suspension. There is no evidence in the record that appellant imposed corporal punishment upon Skylar as a result of the suspension. However, on May 20, 2002, upon learning that Skylar had forgotten to complete his homework log, she became angry enough to repeatedly strike Skylar with her belt.
 {¶ 25} We must review the record to determine whether, taking into account the totality of the circumstances presented, the state proved by clear and convincing evidence that Skylar Horton was an abused child. This requires an inquiry into (1) the excessiveness (or lack thereof) and necessity (or lack thereof) of the corporal punishment appellant inflicted, and (2) whether the punishment created a substantial risk of serious physical harm. R.C. 2919.22(B)(3). Perceiving no evidence that hospitalization was required, and no evidence of incapacity or temporary, serious disfigurement, we must determine whether the evidence supports a finding that appellant caused Skylar to suffer acute pain the duration of which caused substantial suffering or non-acute, but prolonged or intractable pain. R.C.2901.01(A)(5)(e).
 {¶ 26} As we noted earlier, Skylar's severe bruising may support a finding of abuse, but must be accompanied by the presence of other facts and circumstances the totality of which satisfies the requirements of R.C. 2151.031(C), R.C.2919.22(B)(3) and R.C. 2901.01(A)(5)(e). The other circumstances include the reasonableness and necessity of the particular punishment administered, the circumstances giving rise to the particular incident, the nature, manner and measure of the discipline, the behavior being punished, and Skylar's age, history, and past response to non-corporal punishment.
 {¶ 27} In this case, the evidence supports a finding that the bruising occasioned by appellant having whipped Skylar with her belt was indeed severe. The bruising was described as "very deep" and "very red" and persisted for three to more than seven days. It was severe enough to prompt Ms. Mayer to send Skylar to the nurse for ice immediately upon noticing it. Ms. Lausch also noticed marks that were consistent with the shape of a belt buckle. The evidence also supports a finding that the physical harm involved pain that was acute, both at the time the blows were inflicted and throughout that night, even to the point of waking Skylar from sleep at approximately 2:00 a.m. Skylar's testimony also establishes that the pain he felt lasted well beyond the time immediately following his altercation with appellant, such that it was not error to conclude that Skylar's pain was of such duration as to result in substantial suffering. We note that R.C. 2919.22(B)(3) requires only that the corporal punishment create a substantial risk, or strong possibility, that such pain and suffering will occur. In this case the evidence demonstrates, clearly and convincingly, that such pain and suffering did in fact occur.
 {¶ 28} The second inquiry under R.C. 2919.22(B)(3) is whether the punishment was excessive under the circumstances. The evidence in this case reveals that the whipping incident was precipitated by Skylar having failed to complete his homework log on the day in question and, according to appellant's statement to Dahl, Skylar getting angry with appellant and kicking her. Skylar was 11 years old at the time of the incident and testified that he had a history of problems keeping track of and completing his homework. There is no evidence as to his response in the past to non-corporal punishment imposed due to problems involving his homework. Taking into account these factors, and all of the facts and circumstances in evidence, it was not error for the trial court to conclude that the particular corporal punishment imposed in this case was excessive and unnecessary.
 {¶ 29} Having found that the record supports the determination that the corporal punishment appellant imposed upon Skylar was excessive under the circumstances and created a substantial risk of serious physical harm, we find that the trial court's adjudication of Skylar as an abused child was supported by sufficient competent, credible evidence, and was not against the manifest weight of the evidence. Accordingly, appellant's first and fifth assignments of error are overruled.
 {¶ 30} In her second assignment of error, appellant argues that, by allowing a victim-witness advocate to sit next to Skylar during his trial testimony, the trial court denied appellant her rights under the Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution (both of which apply only in criminal cases) and theFourteenth Amendment to the United States Constitution. (Though she does not specify, we presume she claims the benefit of the Equal Protection Clause contained in this amendment.) In the argument section of her brief, she does not discuss constitutional issues, but instead relies on R.C. 2930.09, which, by its plain language, applies only to criminal proceedings.
 {¶ 31} Appellant presents no argument regarding how, if at all, she believes the court violated her right to equal protection under the laws. She merely opines that the presence of the advocate "can only feed lies" and "could have" affected Skylar's testimony. We fail to see that appellant was prejudiced in any way by the fact that the magistrate allowed an advocate to sit next to Skylar during his testimony. We perceive no constitutional or statutory violation in allowing such a procedure in this case and, accordingly, we overrule appellant's second assignment of error.
 {¶ 32} In her third assignment of error, appellant argues that the trial court erred when it "turned down" appellant's trial counsel's request to "have the actual belt in evidence"; that is, the belt appellant used to strike Skylar. She argues that admission of the actual belt was "critical" in this case, because the trier of fact should have been able to personally observe its width, length and weight.
 {¶ 33} We note initially that appellant failed to raise this issue in her objections to the magistrate's decision. Rule 40(E)(3)(b) of the Ohio Rules of Juvenile Procedure provides, in part, that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Courts that have construed the analogous language of Civ.R. 53 have held that the failure to file objections to the magistrate's decision under Civ.R. 53(E)(3)(b) constitutes the waiver of the right to appellate review of all but plain error.In re Montgomery (Mar. 30, 2000), 10th Dist. No. 99AP-749, citing Federal Property Mgt. v. Brown (June 25, 1999), 2nd
Dist. No. 17424. The plain error doctrine has been "similarly * * * applied to Juv.R. 40(E)(3)(b)." In re Etter (June 12, 1998), 1st Dist No. C-970510.
 {¶ 34} Upon a thorough review of the transcript of the trial in this case, we find no error at all on the part of the trial court with respect to the non-admission of the belt appellant used to strike Skylar. In the course of a colloquy with the magistrate and the prosecution team, appellant's counsel stated that he "would like to see the actual belt."[6] He went on to tell the magistrate:
Sergeant Latta can bring the belt here, it can be used for demonstrative purposes, and then it can go back to wherever it needs to go in the property room of the courthouse, and transferred from there if necessary. * * * Now, if we want to do it the long way, we can do it the long way. I can subpoena the belt down here, which I have the right, and I can subpoena Ty — Skylar back down here once the belt is produced back down here. We can do it the long way. But we have a child on the stand, it would be logical to do it at one time instead of having him to keep coming back. * * * But I think it's clear that I'm allowed to use the actual evidence and not the substitute evidence. * * * So I would ask that the belt be produced.[7]
 {¶ 35} Appellant's counsel clearly understood that he could have subpoenaed the police to bring the belt to trial. That he failed to subpoena the evidence despite this understanding, and apparently failed to make any attempt to arrange for the evidence to be present at trial, is not an error of the court officer. SeeGenco v. Genco (1960), 90 Ohio Law Abs. 289, 26 Ohio O.O.2d 282, 188 N.E.2d 819, appeal dismissed (1961), Ohio St. 450, 14 Ohio O.O.2d 281, 172 N.E.2d 9, certiorari denied (1961),366 U.S. 976, 81 S.Ct. 1945, 6 L.Ed.2d 1265, rehearing denied (1961),368 U.S. 872, 82 S.Ct. 66, 7 L.Ed.2d 74. This is not a situation where appellant sought, through prescribed methods, to introduce the belt into evidence, and was not permitted to do so. In this case, counsel simply took no action to introduce the belt into evidence. Finding no error on the part of the trial court with respect to the non-admission of the belt, we overrule appellant's third assignment of error.
 {¶ 36} In her fourth assignment of error, appellant argues that the trial court erred to her prejudice when it refused to allow her counsel to cross-examine FCCS caseworker Dahl regarding whether he was aware of corporal punishment being more prevalent within the African-American culture. Without any citation for authority on this point, appellant simply argues, "the issue of cultural differences is highly relevant" and characterizes the trial court's preclusion of this line of questioning as "plain error" that denied appellant a "fair trial."
 {¶ 37} As the magistrate pointed out when she sustained the agency's objection, to allow cultural norms and attitudes to enter into a determination of whether corporal punishment has been administered in such a way that the subject thereof is an abused/neglected/dependent child would be to extend less of the law's protection to children within certain racial or ethnic communities than to children outside of those communities. Relevant here are the words of the United States Supreme Court inRegents of University of California v. Bakke (1978),438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750:
The guarantees of the Fourteenth Amendment extend to all persons. Its language is explicit: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." It is settled beyond question that the "rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights," Shelley v. Kraemer, supra, at 22. Accord, Missouriex rel. Gaines v. Canada, supra, at 351; McCabe v.Atchison, T. S.F.R. Co., 235 U.S. 151, 161-162 (1914). The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal.
Id. at 289-290.
 {¶ 38} For the foregoing reasons, the trial court correctly precluded testimony regarding the degree of difference between the African-American community and the majority community with respect to the prevalence of and attitudes toward corporal punishment. Appellant's fourth assignment of error is overruled.
 {¶ 39} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
Petree and Klatt, JJ., concur.
[1] Appellant's Supplement Memorandum in Support of Objections, 2.
[2] This section has been amended twice since the events subject of this case took place; however, the amendments made no substantive changes to the portions of the definition of the crime of child endangering that are relevant to this case and reprinted herein.
[3] "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8).
[4] Reply Brief, 3.
[5] Reply Brief, 2-3.
[6] Oct. 24, 2002 Tr., at 31, line 18.
[7] Id. at 32, line 10 through 33, line 16.