[Cite as *In re. S.L.*, 2018-Ohio-1111.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY

IN RE:

    S.L.,

ABUSED AND DEPENDENT CHILD.

[SCOTT LUCIUS - APPELLANT]

CASE NO 8-17-25

O P I N I O N

IN RE:

    R.L.,

DEPENDENT CHILD.

[SCOTT LUCIUS - APPELLANT]

CASE NO 8-17-26

O P I N I O N

IN RE:

    G.L.,

DEPENDENT CHILD.

[SCOTT LUCIUS - APPELLANT]

CASE NO 8-17-27

O P I N I O N

IN RE:

    B.L.,

DEPENDENT CHILD.

[SCOTT LUCIUS - APPELLANT]

CASE NO 8-17-28

O P I N I O N

**IN RE:**

    **L.L.,**

**ABUSED AND DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO 8-17-29**

**O P I N I O N**

---

**IN RE:**

    **S.L.,**

**ABUSED AND DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO 8-17-33**

**O P I N I O N**

---

**IN RE:**

    **R.L.,**

**DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO 8-17-34**

**O P I N I O N**

---

**IN RE:**

    **G.L.,**

**DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO 8-17-35**

**O P I N I O N**

**IN RE:**

    **B.L.,**

**DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO  8-17-36**

**O P I N I O N**

---

**IN RE:**

    **L.L.,**

**ABUSED AND DEPENDENT CHILD.**

**[SCOTT LUCIUS - APPELLANT]**

**CASE NO  8-17-37**

**O P I N I O N**

---

**Appeals from Logan County Common Pleas Court
Juvenile Division
Trial Court Nos. 17 CS 26, 17 CS 27, 17 CS 28, 17 CS 29 and 17 CS 30**

**Judgments Affirmed in Cases 8-17-25 – 8-17-28 and 8-17-33 – 8-17-37
Judgment Affirmed in Part and Reversed in Part
in Case No. 8-17-29 and Cause Remanded**

**Date of Decision:   March 26, 2018**

---

**APPEARANCES:**

    *Alison Boggs* **for Appellant**

    *Stacia L. Rapp* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Appellant, Scott Lucius ("Scott"), appeals the judgment entries (of adjudication and disposition) of the Logan County Common Pleas Court, Juvenile Division, finding two of his children, S.L. and L.L., to be abused and dependent children, and finding his remaining children, G.L., B.L., and R.L., to be dependent.

*Facts and Procedural History*

{¶2} This matter involves the appeal of five juvenile court adjudications *and* dispositions, consolidated and heard as one case in the trial court. Thus, we have consolidated these matters in this Court. While this appeal concerns ten separate appeals (five adjudications and five dispositions), we will discuss their procedural histories together, as they are intertwined.

{¶3} Scott is the adoptive father of G.L. (DOB: 1/8/04), B.L. (DOB: 4/29/09), S.L. (DOB: 12/21/09), R.L. (DOB: 11/28/08) and L.L. (DOB: 10/15/13). On May 23, 2017, Logan County Children Services ("LCCS") received a referral from an Indian Lake School official regarding the possible physical abuse of S.L. The abuse referral stems from S.L. missing school on May 22, 2017 due to injuries she received from being punished by Scott.

{¶4} When S.L. returned to school on May 23, 2017, a school official spoke with her and observed bruising on her arm and severe bruising on her back. S.L.

advised the school official that she was spanked with a belt (by Scott) a couple of days prior. With that information, the school official immediately notified LCCS of the child's condition, which was received by Ryan Pratt ("Pratt") intake supervisor with LCCS. That same day, Pratt and Detective Mike Brugler ("Det. Brugler"), of the Logan County Sheriff's office, contacted Scott at his residence. Initially, Scott advised Pratt that while he and his husband, Walt, do spank the children with a belt, he suggested that S.L.'s bruises were a result of her falling out of bed. However, after interviewing Scott, Walt and some of the children, Det. Brugler arrested Scott for felony child endangering. (Tr. 157). Upon Scott's arrest, Pratt contacted the Logan County Prosecutor's office seeking a temporary custody order of the five children.

{¶5} After arresting Scott, Det. Brugler re-interviewed him at the Sheriff's office wherein Scott admitted that he had punished S.L. by hitting her with a belt. Scott admitted to Det. Brugler that it was possible that the bruising (on S.L.'s back) was caused by his punishment.

{¶6} On May 24, 2017, LCCS filed five abuse and dependency complaints, with motions for the emergency temporary custody of the children, in the Logan County Juvenile Court. The complaints alleged S.L. to be abused and dependent and the remaining children to be dependent. That same day, the trial court granted

LCCS's motions for emergency temporary custody of the children. (Doc. 2). On June 9, 2017, the trial court appointed a guardian ad litem on behalf of the children.

**{¶7}** However, on July 18, 2017, LCCS filed an amended complaint as to L.L., alleging L.L. to be an abused child in addition to the original allegation of dependency. The amended complaint was filed after Scott's oldest child, G.L., furnished pictures to the Logan County Sheriff's office that she had taken of L.L. after L.L. had been spanked and pinched by Scott.

**{¶8}** Ultimately, an adjudicatory hearing occurred in the trial court on August 4, 2017 for all five children wherein the trial court found S.L. and L.L. to be abused and dependent and R.L., B.L. and G.L. to be dependent children. A dispositional hearing was scheduled for all of the children in the trial court on August 17, 2017. At the dispositional hearing, the trial court continued its orders of temporary custody (of the children) to LCCS. (*See* August 22, 2017 judgment entry).

**{¶9}** Scott has appealed the adjudications *and* dispositional orders of the trial court for all five children (ten appeals) raising the following common assignments of error in each appeal for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. APPELLEE DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILDREN WERE ABUSED AND/OR**

**DEPENDENT AND THE TRIAL COURT INCORRECTLY INTERPRETED THE PERTINENT STATUTES AND THE APPLICATION TO THE FACTS OF THE CASE.**

**ASSIGNMENT OF ERROR NO. II**

**THE CHILDREN'S GUARDIAN AD LITEM FAILED TO PERFORM NECESSARY DUTIES PURSUANT TO OHIO REVISED CODE SECTION 2151.281 AND SUPERINDENT [SIC] RULE 48, THEREBY NOT ACTING IN THE CHILDREN'S BEST INTEREST, TO APPELLANT'S DETRIMENT AND IN VIOLATION OF HIS DUE PROCESS.**

**ASSIGNMENT OF ERROR NO. III**

**APPELLANT'S COUNCIL [SIC] WAS INEFFECTIVE THEREBY PREJUDICING APPELLANT, RESULTING IN A DECISION THAT IS UNRELIABLE.**

{¶10} At the outset, we find that on appeal Scott only addresses errors relative to the adjudications of the children, not the trial court's dispositional orders. Therefore, we will not consider the five appeals relative to the trial court's dispositional orders. (8-17-33, 8-17-34, 8-17-35. 8-17-36 and 8-17-37). (*See generally*, App.R. 12(A)).

*First Assignment of Error*

{¶11} In his first assignment of error, Scott argues that the trial court's determination that S.L. and L.L. are abused and dependent children and that G.L. R.L. and B.L. are dependent children was against the manifest weight of the evidence.

*Standard of Review*

**{¶12}** In juvenile proceedings, we apply the criminal standard for reviewing manifest-weight challenges. *In re Corey Children*, 11th Dist. Geauga No. 2005-G-2649, 2006-Ohio-2013, ¶17. Under this standard, when reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "The discretionary powers to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶13}** The role of the appellate court is limited to weighing the evidence introduced at trial and then determine whether the state carried its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), at paragraph one of the syllabus. Furthermore, "[i]n an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the

requisite burden of proof is by clear and convincing evidence". *In re Anthony*, 11th Dist. Ashtabula No. 2002-A-0096, 2003-Ohio-5712, citing Juv.R. 29(E)(4).

**{¶14}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re G.C-O.*, 3d Dist. Seneca No. 13-12-56, 2013-Ohio-4974, citing *In re C.B.*, 12th Dist. Butler Nos. CA2008-01-002, CA2008-01-0003, 2008-Ohio-5543, ¶10. The party seeking adjudication has the burden of establishing that a child is abused or neglected before the court may enter a finding of abuse or dependency. *In re Stewart*, 12th Dist. Clinton No. CA99-08-024, 2000 WL 290134 (2000). "Requiring the state to prove its case by clear and convincing evidence is part of the protection afforded to parents in abuse and dependency cases". *Id.*

**{¶15}** "Once the clear and convincing standard has been met to the satisfaction of the [juvenile] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof". *In re Kinney*, 1st Dist. Hamilton No. C-020067, 2002-Ohio-2310, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368. Judgments which are supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. *In re Mercer*, 10th Dist. Franklin

No. 04AP-422, 2005-Ohio-1845, citing C.*E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, syllabus.

*Analysis*

**{¶16}** In the cases before us, Scott's primary argument is that the trial court erred in finding that S.L. and L.L. are abused children. In relation to the record before us, R.C. 2151.031(C) and (D) defines an 'abused child' as "any child who:

(A) * * *

(B) * * *

(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.

(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare."

**{¶17}** Therefore, in a case alleging abuse under paragraph C of R.C. 2151.031, the State of Ohio must prove, by clear and convincing evidence, that (1) a child sustained physical or mental injury and (2) the injury was caused by non-accidental means, or was at variance with the history given. With that in mind, Ohio law has recognized that parents have a right of restraint over their children, and the duty to correct and punish them for their misbehavior. *In re Schuerman*, 74 Ohio

App.3d 528, 531 (1991). Parents have the right to use reasonable physical discipline, or corporal punishment, to prevent and punish a child's misconduct. *State v. Hauenstein*, 121 Ohio App.3d 511, 516, citing *State v. Suchomski*, 58 Ohio St.3d 74, 75. The right of parents to administer reasonable corporal punishment is deeply rooted in the history and traditions of this nation. *See State v. Hoover*, 5 Ohio App.3d 207, 211, quoting *Quinn v. Nolan*, 7 Dec.Rep 585, 586 (1879) ("From the time of Solomon to the present, parents have had the right, in a proper manner and to a proper degree, of inflicting corporal punishment upon their children * * *").

{¶18} It is further of note that Ohio law recognizes a parent's right to administer corporal punishment. R.C. 2919.22(B) provides in relevant part,

> (B) No person shall do any of the following to a child under the age of eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
> (1) Abuse the child;
>
> (2) Torture or cruelly abuse the child;
>
> (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
>
> (4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development;
>
> * * *

{¶19} Whether parental discipline is "extreme or excessive" is determined in light of the totality of the circumstances. *Hauenstein*, *supra*, citing *State v. Hart*, 110 Ohio App.3d 250. "In analyzing the totality of the circumstances, a court should consider the following factors: (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." *State v. Luke*, 3d Dist. Union No. 14-10-26, 2011-Ohio-4330, ¶22, citing *In re J.L.*, 176 Ohio App.3d 186, 199, 2008-Ohio-1488 (citations omitted). This inquiry is necessary to protect and balance a parents' fundamental right to raise and control their children and the state's interest in the protection and safety of children and in the reporting of child abuse. *In re Horton*, 10th Dist. Franklin No. 03AP-1181, 2004-Ohio-6249.

*Abuse and Dependency of S.L.*

{¶20} At the adjudicatory hearing the State of Ohio presented several witnesses, including Detective Mike Brugler ("Det. Brugler") and Dr. Karla Hauersperger ("Dr. Hauersperger") relative to S.L.'s abuse. Scott called just one witness and chose not to testify on his own behalf.[1]

{¶21} Det. Brugler testified that he was contacted by Logan County Children Services regarding the suspected abuse of S.L. He stated that during his

---

[1] The record suggests that Scott chose not to testify due to the child endangering criminal charges pending against him.

-12-

investigation, he interviewed Scott and Walt. When Det. Brugler questioned (Scott) about the bruising on S.L.'s back, Scott indicated that her injuries were most likely caused as a result of her falling out of bed. (Tr. 145). However, during a second interview with Det. Brugler, Scott acknowledged that the bruising of S.L. "could have been caused by him hitting her with a belt". (*Id.* at 150). Scott told Det. Brugler that he had spanked S.L. with a leather belt, administering approximately 8 strikes, but stopped due to S.L.'s squirming. (Tr. 150). Scott further stated, during his interview with Det. Brugler, that the day after the 'spanking', S.L. complained of back pain. Scott also told Det. Brugler that S.L. laid on the couch all day with ice on her back the day after his spanking and that he permitted her to stay home from school on Monday (two days after the incident), due to the injury to her back.

{¶22} Dr. Hauersperger, a physician in the emergency department and urgent care unit with Nationwide Children's Hospital, testified that on May 23, 2017, S.L. was brought to the urgent care unit for a medical examination. Dr. Hauersperger testified that during the examination of S.L., she found "a confluence of bruising in the lower back, lower thoracic and lumbar area here, and then she had multiple linear bruises that go up the back." (Tr. 170-171). Dr. Hauersperger further testified that S.L.'s bruises were the result of "the striking of the skin with some sort of straight edge" and would not have been caused by S.L. falling out of bed. Dr. Hauersperger diagnosed S.L. with child physical abuse, otherwise known as non-accidental

trauma. (Tr. 173). Dr. Hauersperger further testified that "[t]he location of the bruises, being from up on the lower part of the chest wall and lower part of the back, the - - these are where the kidneys sit, so depending on the strength of the strike, there would be kidney injury". *Id*.

{**¶23**} The record contains competent and credible evidence that Scott struck (then) seven-year-old S.L. multiple times with a belt. Photographs admitted into evidence (Exhibits 4-10) taken two days *after* the incident revealed the presence of multiple bruises and linear marks on S.L.'s back and left arm. Even if Scott was trying to strike S.L. on her buttocks to punish her, he, without question, missed that mark, causing concerning bruises and marks on S.L.

{**¶24**} Scott argues that he was administering corporal punishment to S.L. To that argument, the trial court found as follows:

> **"The Court finds that when you started with chores being punishment that when this wasn't working to your satisfaction that instead of continuing with hands or whatever and using more progressive steps you went straight to using a belt, and although corporal punishment in Ohio is legal, it is designed to be done in such a fashion that you wait and do it when everybody is cool, calm, and collected; it's used in a reasonable manner that does not leave marks or injuries on the child.**
>
> **So, it is clear to the Court and the Court is convinced that based upon the pictures and testimony of the witnesses that this went far beyond of [sic] corporal punishment and it meets definition of abuse in this type of action. The Court finds that the abuse occurred because these were not accidental means. The doctor told us that she made the finding, it was her medical opinion that it was physical abuse not by accidental means. And**

> **you cannot hang your hat on this was acceptable corporal punishment.  It was not."**

(Tr. 207- 208).

**{¶25}** Thus, for Scott's argument to succeed, (as to reasonable corporal punishment of S.L.) he must show that his punishment was not excessive under the totality of the circumstances (i.e. "*Hart* analysis") and that he did not create a substantial risk of serious physical harm to S.L.

**{¶26}** R.C. 2901.01(A)(5)(e) defines "serious physical harm to a person" as "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain".  R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist".

**{¶27}** "Discipline methods on a child which leave recognizable bruising and cause pain which lasts beyond the time immediately following an altercation between parent and the child *may establish a finding of substantial risk of serious harm*."  *In re Kristen V.*, 6th Dist. Ottawa No. OT-07-031, 2008-Ohio-2994, ¶69.  (Emphasis added).

**{¶28}** In the record before us, we find competent and credible evidence to support that Scott's conduct created a substantial risk of serious physical harm to S.L. under the totality of the circumstances and evidence presented.  The State

introduced photographs of S.L.'s back revealing an excessive amount of bruising to the 7-year old child. Dr. Hauersperger testified to the "multiple bruising" on S.L.'s back and, that due to the location of the bruising, there was a possibility of injury to S.L.'s kidneys. Further, Dr. Hauersperger diagnosed S.L.'s injury as "physical abuse, non-accidental trauma". (Tr. 173). The testimony of Det. Brugler established that S.L. experienced pain for (at least) two days following the incident. According to the record, Scott's punishment incapacitated S.L. and resulted in Scott deciding to keep her home from school 'due to her back pain'. As such, a reasonable inference can be made that S.L.'s back pain was prolonged in nature.

{¶29} Moreover, under the totality of the evidence, we find no error with the trial court's determination that the State met its burden of clear and convincing evidence that S.L. was abused. See *Matter of Wilson Children*, 5th Dist. Stark No. 1994CA00161, 1995 WL 156326 (evidence, including admission that the parent hit the child on lower back with a belt, leaving marks on stomach and back, was sufficient to support courts' finding that, because of parent's actions, child suffered physical injury that harmed or threatened to harm the child's health or welfare); *State v. Miller*, 1st Dist. Hamilton No. C-990166, 2000 WL 216632 (evidence supported finding that defendant's actions, including bruises from striking the child with a belt, constituted abuse, i.e. "any act which causes physical or mental injury that harms or threatens to harm the child's health or welfare"). Here, we find the

trial court's "*Hart* analysis" (as to whether S.L.'s punishment was excessive) is supported by competent and credible evidence that S.L. suffered acute pain of such duration as to result in substantial suffering. As such, the trial court's adjudications (of S.L.) as an abused and dependent child were proper.

{¶30} Accordingly, Scott's first assignment of error, as it pertains to S.L., is not well taken.

*Abuse and Dependency of L.L.*

{¶31} As to the evidence offered to prove L.L. to be an abused and dependent child, the State called G.L., the 13-year-old sister of L.L., to testify. G.L. testified that on one particular occasion, L.L., age 3, had made a "mess" while attempting to go to the bathroom by himself. G.L. testified that after the incident, Scott told her to give L.L. a bath and clean him up. While bathing him, G.L. noticed red marks on L.L.'s back (from being spanked with a belt) and red marks on his chest, which she claimed were from Scott pinching him. G.L. took photographs of the marks (on L.L.) with her iPad.

{¶32} The State also offered the testimony of Det. Brugler relative to L.L.'s abuse. Det. Brugler testified that on July 13, 2017 Heather Shelt, the children's foster parent, brought G.L. into the Sheriff's office along with her (G.L.'s) iPad. Based upon the photographs (on G.L.'s iPad) revealing marks on L.L. and due to

the ongoing investigation of Scott's alleged abuse, Det. Brugler contacted the prosecutor.[2]

**{¶33}** As to L.L, the trial court, in its judgment entry of adjudication, states "it is not appropriate to discipline a three-year-old because he wet himself". However, even though the trial court engaged in a "*Hart* analysis" to determine that L.L.'s punishment was excessive, the record is void of *any* evidence supporting that L.L.'s injuries amounted to "serious physical harm" as set forth under R.C. 2901.01(A)(5)(e).

**{¶34}** As we noted above, in a case charging abuse under R.C. 2151.031(C), the State must prove by clear and convincing evidence, that (1) the child sustained physical or mental injury and (2) the injury was caused by non-accidental means, or was at variance with the history given. And, R.C. 2901.01(A)(5)(e) defines "serious physical harm to a person" as "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain". R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist".

**{¶35}** Moreover, despite our agreement with the trial court that Scott's punishment of L.L. was excessive, we find the evidence of serious physical harm in

---

[2] The record suggests that Scott was also indicted by the Logan County Grand Jury for child endangering with regards to L.L.

the record to be non-existent. Thus, upon our review of the record and the evidence provided, we cannot conclude that the punishment inflicted upon L.L. caused a substantial risk of serious physical harm. Thus, the State failed in its burden under R.C. 2151.031(C) to prove that L.L. was an abused child. Nonetheless, we do find that the excessive punishment of L.L. by Scott supports the trial court's finding of dependency.

{¶36} Accordingly, the trial court erred in finding L.L. to be an abused child. Thus, we reverse and vacate the trial court's abuse adjudication of L.L.

*Dependency of G.L., R.L. and B.L.*

{¶37} The complaints filed by the State alleged that R.L., G.L, and B.L. were dependent pursuant to R.C. 2151.04(C), which defines a dependent child as any child:

> **"Whose condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship"**

An adjudication under R.C. 2151.04(C) requires evidence that the parent's conduct is having "an adverse impact upon the child sufficiently to warrant state intervention". *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." *Id.* Furthermore, an adverse impact that supports a finding of dependency and the intervention of the state must be more than an "upset" child or

a "temporary unhappiness". *In re Holzwart*, 3d Dist. Seneca Nos. 13-04-32, 13-04-33, 13-04-34, & 13-04-40, 2005-Ohio-1602, ¶12.

**{¶38}** The record reflects that Scott was arrested by Det. Brugler for child endangering relative to the injuries suffered by S.L. Upon Scott's arrest, LCCS caseworker Pratt commenced the process to obtain emergency custody of the children since Scott was the only parent of the children. The trial court, in its entry granting LCCS's request for temporary custody of the children, determined:

> **"that the removal of the Children from the custody of their Father, and the placement of the Minor Children with Logan County Children Services is necessary to prevent *immediate* or threatened physical or emotional harm to the Children". (Doc 2). (Emphasis added).**

**{¶39}** At the adjudicatory hearing, the trial court received evidence from G.L., Pratt and Det. Brugler as to the condition and environment of Scott's home on the issue of whether G.L., R.L. and B.L. were dependent children. As to the environment of Scott's home, G.L., age 13, testified that in the mornings, she would ready the girls (R.L., S.L. and B.L.) for school and get them on the bus while Scott and Walt watched t.v. in their bedroom. (Tr. 17). She further testified that the kids did a large portion of the housework. (Tr. 17-18). G.L. also testified that all the girls regularly got spanked with a belt (15 – 20 times per spanking) by either Scott or Walt. (Tr. 21). She further stated that they would frequently have bruising from the spankings. (Tr. 27).

{¶40} Next, LCCS caseworker Pratt testified that during his interview with Scott and Walt, both (Scott and Walt) admitted to spanking the children with a belt approximately 8-9 strikes per spanking. (Tr. 134). Pratt further testified as to the bruising on S.L. stating he saw different shades of brown, blue, purple and green on her. (Tr. 136). Pratt testified that due to the extent of S.L.'s injuries, LCCS was concerned for the safety and well-being of the other children and was not comfortable with the children to remain in Scott's home. (*Id*).

{¶41} And finally, Det. Brugler confirmed that not only was Scott arrested for and indicted on a felony child endangering charge, but Walt, Scott's husband, was also indicted for child endangering. (Tr. 157).

{¶42} Thus, under the evidence presented, the children's home environment was permeated with excessive punishments on the children; unmotivated adults as to assisting the children with their basic needs; and two adults under indictment for felony child endangerment. As such, under the evidence adduced at trial, the State met its burden that *all of the children* were dependent pursuant to R.C. 2151.04(C) due to the condition of the children's environment in Scott's home.

{¶43} Accordingly, we overrule Scott's first assignment of error.

*Second Assignment of Error*

{¶44} In his second assignment of error, Scott claims that the guardian-ad-litem failed to perform necessary duties pursuant to R.C. 2151.281 and

-21-

Superintendent Rule 48, thereby not acting in the children's best interest, which violated his due process rights. We disagree.

*Standard of Review*

**{¶45}** In reviewing the record, Scott failed to object to the actions and performance of the guardian ad litem at trial. As a result, Scott has failed to preserve this error for appeal. "It is well established that if a party fails to object at the trial court level, that party waives all but plain error". *In re L.L.*, 3d Dist. Logan Nos. 8-14-25, 8-14-26, 8-14-27, 2015-Ohio-2739, ¶51, quoting *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶84.

**{¶46}** In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, addressing the applicability of the plain error doctrine to appeals of civil cases, the Supreme Court of Ohio stated:

> **"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."** *Id.,* at the syllabus.

*Analysis*

**{¶47}** Under this assignment of error, Scott fails to argue plain error. "'[T]his court will not sua sponte undertake a plain-error analysis if [an appellant] fails to do so.'" *Id.,* quoting *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-

Ohio-2577, ¶70, quoting *McMaster v. Akron Health Dept., Housing Div.*, 189 Ohio App.3d 222, 2010-Ohio-3851 ¶20. Therefore, we need not address Scott's argument and accordingly, this assignment of error is not well taken and overruled.

*Third Assignment of Error*

**{¶48}** In Scott's third assignment of error, he claims that his trial counsel was ineffective thereby prejudicing him, resulting in a decision that was unreliable. Specifically, Scott argues that trial counsel did not know that hearsay was not permitted in an adjudicatory hearing where there are allegations of abuse, neglect and dependency.

*Standard of Review*

**{¶49}** To establish ineffective assistance of counsel, a defendant must show deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation; and prejudice – a reasonable probability that but for counsel's error, the proceedings result would have been different. *In re E.C.*, 3d Dist. Defiance No. 4-15-08, 2015-Ohio-4807, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1981).

*Analysis*

**{¶50}** In support of this assignment of error Scott argues that his trial counsel 1) failed to object to hearsay statements made by G.L. at trial; and 2) failed to call the children's family physician as a witness.

*Hearsay Objections*

**{¶51}** Relative to Scott's hearsay argument, he directs us to eight (8) instances in the trial transcript wherein trial counsel failed to object to hearsay.[3] We note at the outset that "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel". *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2185, ¶103.

**{¶52}** Scott argues that the transcript contains "numerous hearsay statements of G.L." which allowed "Appellee to present damaging evidence through one child instead of calling the available child to testify". In our review of the transcript, only pages 29, 40, 46, 50, 92, 102 contain G.L.'s testimony. Thus, because we find no *testimony* of G.L. on pages 127 and 158, we need not consider such passages in light of Scott's argument.

**{¶53}** In reviewing G.L.'s testimony on pages 29 and 40, we find no hearsay, only innocuous references (by G.L.) as to how the children in Scott's home got into trouble. As to the testimony (of G.L.) on pages 46 and 102 of the transcript, we find that the purported hearsay statements (albeit not clearly referenced to us by Scott) involve the reactions of the children to visitation (with Scott) since being removed from Scott by the trial court on May 24. We find the children's reactions (to visitation) not to be statements offered to prove whether or not the children were

---

[3] Transcript of 8/4/17, pgs. 29, 40, 46, 50, 92, 102, 127 and 158.

either abused or dependent. Rather, such reactions represent the children's present sense impressions to visitation and are not hearsay herein.

**{¶54}** As to the purported hearsay on page 50 of the transcript, G.L. testified (that S.L. and B.L. stated) "that they were sick and would stay home". However, S.L. and B.L.'s statements bear no reference to the abuse or dependency allegations in question because their statements were in reference to their missing of school the previous school year. Thus, that statement is not objectionable hearsay.

**{¶55}** And finally, on pages 92-93 of the transcript, G.L.'s testimony "they told me that they were crying" refers to present sense impressions of her classmates in relation to seeing her (G.L.'s) bruises. Once again, this statement is not hearsay because "statements describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness" are hearsay exceptions under Evid.R. 803(1). We also find this statement is not hearsay.

**{¶56}** Thus, as it relates to G.L.'s testimony, Scott has not sustained his burden in proving that trial counsel's failure to object to various hearsay statements resulted in ineffective assistance of counsel.

*Failure to Call Witness*

**{¶57}** In regards to Scott's claim that his trial counsel was ineffective for failure to call the children's family physician, we find such argument

underdeveloped as to the prejudice he experienced from such failure. "The decision whether to call or not call witnesses is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel." *State v. Bofia*, 3d Dist. Henry No. 7-03-12, 2004-Ohio-3018, quoting *State v. Utz*, 3d Dist. Crawford No. 3-03-38, 2004-Ohio-2357, ¶12. Since trial strategy dictates whether or not a witness should or should not be called (as a witness), we cannot speculate that the failure to call the children's family doctor prejudiced Scott. It is perfectly reasonable that the testimony of the children's doctor could lead to damaging evidence against Scott. Thus, without a showing of prejudice, Scott's argument fails.

{¶58} Accordingly, having found no merit in Scott's arguments under this assignment of error, we overrule Scott's third assignment of error.

{¶59} In sum, as to S.L., G.L., B.L. and R.L., having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first, second and third assignments of error and affirm the judgments of the trial court in cases 8-17-25, 8-17-26, 8-17-27, 8-17-28, 8-17-33, 8-17-34, 8-17-35, and 8-17-36.

{¶60} And as to L.L., having found error prejudicial to the Appellant herein in the particulars assigned and argued, we sustain Appellant's first assignment of error only as to the judgment entry of the adjudication of abuse and reverse such

abuse adjudication and remand this matter to the trial court to vacate such abuse adjudication in its record in case 8-17-29.

{¶61} Further, as to L.L., we overrule Appellant's first assignment of error as to L.L.'s adjudication of dependency (case 8-17-37) and overrule Appellant's second and third assignments of error and affirm the judgment of the trial court in cases 8-17-29 and 8-17-37.

*Judgments Affirmed in cases 8-17-25 thru 8-17-28*
*and 8-17-33 thru 8-17-37*

*Judgment Affirmed in Part and Reversed in Part*
*and Cause Remanded in case 8-17-29*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**